UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00194-GNS

LINDA HUBER                                                                                              PLAINTIFF

v.

JEFFERSON COUNTY PUBLIC SCHOOLS; and
IMAN TALAAT (in her individual and official capacity),
Retired Principal of Liberty High School                                                      DEFENDANTS

## MEMORANDUM OPINON AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss (DN 4). The motion is ripe for adjudication. For the reasons below, the motion is **GRANTED**.

### I.   BACKGROUND

Plaintiff Linda Huber ("Huber") was employed by Jefferson County Public Schools ("JCPS") beginning in 1993 as a business and career coordinator for the district's various middle schools. (Compl. ¶ 7, DN 1-1). In 2001 she was permanently reassigned to Liberty High School ("Liberty") as its "Community Liaison." (Compl. ¶ 8). As Community Liaison, Huber worked closely with Liberty's "Discovery Program" in addition to planning and coordinating other career- and community-oriented programming. (Compl. ¶¶ 8-9).

Huber left Liberty in November 2009, allegedly as the result of "harassment, humiliation and systemic discrimination" over the years at Liberty, but particularly once Iman Talaat ("Talaat") became the school's principal. (Compl. ¶ 10). Huber attributes this discrimination to her conservative political views and refers to instances where school personnel asked her to remove a pro-life sign from her car parked in the school's parking lot and prohibited her from mentoring students on a project concerning abortion, though those with opposing political stances were not

similarly admonished. (Compl. ¶¶ 12, 16-19, 21). Huber asserts that Talaat was aware of her conservative views and "used her position to harass, intimidate, terrorize and destroy [her] career[] . . . ." (Compl. ¶¶ 22-23). Huber provides that on at least one occasion, Liberty's administrator-curriculum director, Sandra Harris ("Harris"), had to defend Huber in a meeting with Talaat regarding her political and religious beliefs. (Compl. ¶ 22). Huber further contends she was discriminated against based on her age as one of many Liberty employees over forty years of age whom Talaat wished to remove from the school. (Compl. ¶ 37). Huber alleges Talaat instructed other employees to "collect and construct false evidence" against her in order to support termination. (Compl. ¶ 25).

Huber alleges that on October 1, 2009, she received a political email from a fellow Liberty employee encouraging recipients not to buy certain newly released stamps featuring Muslims on them. (Compl. ¶ 39). Huber provides that she forwarded this email to her sister-in-law. (Compl. ¶ 39). After apparently learning of the email, Talaat allegedly accosted Huber in her office: screaming, walking in an aggressive manner, forcing Huber against a wall, and accusing her of "hating" and being "racist" against Muslims. (Compl. ¶ 39). Huber, shaken from the ordeal, claims she packed her belongings, left at her usual time and never returned to her job at Liberty. (Compl. ¶ 39).

After this incident, Huber wrote JCPS superintendent, Donna Hargins, on April 24, 2012, to inform her of her confrontation with Talaat and of Talaat's other actions. (Compl. ¶ 41). Huber alleges she received no response from JCPS, so she hired an attorney to meet with the district's department dealing with compliance and investigations but was again "met with resistance and apathy." (Compl. ¶ 43).

Huber alleges Julia Foster ("Foster") initiated an investigation into Talaat's conduct after she left her job at Liberty and confirmed that Talaat forced employees to make false statements against Huber. (Compl. ¶ 28). After Foster's investigation, Huber claims JCPS hired an ex-FBI agent to further investigate claims of abuse, harassment, and intimidation leveled against Talaat. (Compl. ¶ 29). During this investigation, the ex-FBI agent interviewed Huber. (Compl. ¶ 30). Huber states that she was unaware of all the steps Talaat had taken to harass her until the summer of 2016 when she obtained copies of records from the investigation, including interviews with Liberty faculty showing numerous instances where Talaat targeted Huber because of her religious and political affiliations. (Compl. ¶ 31). Huber alleges that, unknown to her, Talaat "had actively targeted her, and informed her 'inner circle' of teachers and administrators as much.

Huber uncovered further information in 2018, when she became aware for the first time of the full extent to which Talaat conspired to remove her from her position at Liberty. (Compl. ¶ 34). Two Liberty employees, including the assistant principal during Huber's tenure, "attested to the fact that during some administrative staff meetings" Talaat identified Huber as someone Talaat targeted for her religious and political beliefs. (Compl. ¶¶ 34-36). Huber further alleges that Talaat's targets all share the characteristic of being older than forty. (Compl. ¶ 37).

On February 13, 2019, Huber filed the present action in Jefferson Circuit Court in Louisville, Kentucky. (Compl. 1). Huber first asserts that JCPS and Talaat discriminated against her based on her age in violation of the Kentucky Civil Rights Act ("KCRA"). (Compl. ¶¶ 48-54). She also asserts state claims for civil conspiracy and hostile work environment. (Compl. ¶¶ 55-68). Huber further asserts two federal claims under 28 U.S.C. § 1983. She contends that JCPS and Talaat deprived her of her First Amendment rights by isolating, humiliating, and harassing her for her religious and political beliefs. (Compl. ¶¶ 69-80). Huber also asserts a Section 1983 claim

3

for retaliation because JCPS and Talaat took adverse employment action against her for exercising her First Amendment rights, and no action was taken to investigate her complaints of discrimination, harassment, hostility and abuse. (Compl. ¶¶ 81-93). Defendants removed the action to this Court on March 18, 2019. (Notice Removal 1, DN 1).

Defendants now seek to dismiss Huber's claims under Rule 12(b)(6), arguing all her claims are time-barred. (Defs.' Mot. Dismiss 1-12, DN 4). Huber responds that the "discovery rule" articulated in *Urie v. Thompson*, 337 U.S. 163 (1949), permits her claims to proceed because she did not become aware of the full extent of the illegal actions taken against her until 2018. (Pl.'s Resp. Defs.' Mot. Dismiss 3-8, DN 5 [hereinafter Pl.'s Resp.]). Alternately, Huber argues equitable tolling applies. (Pl.'s Resp. 5). In their Reply, Defendants disagree and contend that this rule does not apply to her state law claims, her pleadings do not foreclose its applicability to her federal claims, and that she has failed to demonstrate equitable tolling is appropriate. (Defs.' Reply Mot. Dismiss 2-7, DN 6 [hereinafter Defs.' Reply]).

## II. JURISDICTION

The Court has subject matter jurisdiction over this matter because Plaintiff's Section 1983 claim presents a federal question. 28 U.S.C. § 1331.

## III. STANDARD OF REVIEW

To survive dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering a defendant's motion to dismiss, the Court will "accept all the

4

[plaintiff's] factual allegations as true and construe the complaint in the light most favorable to the [plaintiff]." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (citation omitted).

## IV.     DISCUSSION

Defendants argue Huber's federal and state claims are untimely under their respective one- and five- year statutes of limitation. (Defs.' Mot. Dismiss 6-13). Huber defends that the discovery rule and equitable tolling apply, excusing any strict compliance with applicable statutes of limitations. (Pl.'s Resp. 4).

### A.     Federal Claims

Because Section 1983 does not contain any statute of limitations, the U.S. Supreme Court instructs that federal courts look to the states' personal injury statutes of limitations for personal injury actions to apply to Section 1983 claims. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Based on Kentucky law, a one-year statute of limitations applies to Section 1983 claims. *Bonner v. Perry*, 564 F.3d 424, 430-31 (6th Cir. 2009); *Collard v. Ky. Bd. Nursing*, 896 F.2d 179, 182 (6th Cir. 1990) ("[S]ection 1983 actions in Kentucky are limited by the one-year statute of limitations found in [KRS] 413.140(1)(a)."). This one-year statute of limitations "begins to run when the plaintiff knows or has reason to know of the injury forming the basis of the action . . . ." *Dixon v. Clem*, 492 F.3d 665, 671 (6th Cir. 2007) (internal quotation marks omitted) (citation omitted). This is known as the "discovery rule," and a plaintiff has "reason to know" of his or her injury when it

should have been discovered through the exercise of "reasonable diligence." *Id*. (internal quotation marks omitted) (citation omitted).

Huber argues that she did not discover the "full extent" of her claims until either 2016, when she obtained copies of some of the investigation's records showing that Talaat "targeted [her] because of her religious and political affiliations[;]" or 2018, when the former assistant principal attested to the fact that Talaat had a list of individuals she wanted terminated for their religious and political beliefs. (Compl. ¶¶ 31, 79). Unfortunately for Huber, however, the information she learned in 2016 was materially identical to what she learned in 2018: that Talaat was targeting Huber for her religious and political beliefs. This provided her with "reason to know" that she was discriminated against for her religious and political beliefs, that Talaat took adverse employment actions against her based on these characteristics, and that JCPS did not take action based on her earlier complaints. Moreover, that Talaat allegedly had a list of religious and political targets adds little to the knowledge Huber had in October 2009 when she retired as a result of actions she believed targeted her because of her religious and political affiliations, including be accosted in her office for sharing an email concerning stamps featuring Muslims. (Compl. ¶¶ 39, 76).

Even ignoring the allegations relating to 2009 and looking at the record in the light most favorable for Huber, she "had reason to know" of her injury stemming from Talaat's discrimination in 2016, at the latest, when she obtained the results of the investigation with interviews from her former coworkers. *See Dixon*, 492 F.3d at 671. The limitation period for bringing her Section 1983 claims therefore would have been sometime in 2017, and this lawsuit is therefore untimely. *See Bonner*, 564 F.3d at 430-31.

Huber also argues that equitable tolling applies to excuse her claim from the one-year statute of limitations for brining Section 1983 claims. (Pl.'s Resp. 5). Huber argues that equitable tolling applies because "she is not an attorney nor legally sophisticated" and that "there is no evidence that she was aware of the actual filing requirement or should have known of the filing requirement." (Pl.'s Resp. 5-6). Huber contends that she began to diligently pursue her rights against the school once she became aware of the discriminatory actions by seeking copies of the investigation of JCPS and Talaat in 2016. (Pl.'s Resp. 5).

Equitable tolling is generally available "when a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (internal quotation marks) (citations omitted). Equitable tolling is sparingly granted and a litigant's failure to abide by a deadline resulting from "garden variety neglect" cannot be excused. *See Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000) (internal quotation marks omitted) (citation omitted). Courts in the Sixth Circuit consider five factors in deciding whether applying equitable tolling is appropriate for an otherwise untimely claim: "1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Truitt v. Cty of Wayne*, 148 F.3d 644, 648 (6th Cir. 2000) (citation omitted). These factors are not comprehensive, and each factor might not be applicable in all cases. *Graham-Humphreys*, 209 F.3d at 561. "The propriety of equitable tolling must necessarily be determined on a case-by-case basis." *Truitt*, 148 F.3d at 648 (citation omitted).

In the present case, Huber's argument that equitable tolling applies must be rejected. Even *pro se* litigants are required to abide by the procedural rules for accessing the courts, including

statutes of limitations. *Graham-Humphreys*, 209 F.3d at 561. With this, Huber's excuses that she was not aware of the actual filing requirement cannot justify equitable tolling because "[i]t is well-settled that ignorance of the law alone is not sufficient to warrant equitable tolling." *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991) (per curiam) (citations omitted).

Huber's other justification is that, under the third factor, she diligently pursued her case after receiving copies of investigation materials in 2016. As discussed above, however, Huber discovered the information in 2016 that she had been targeted for her religious and political affiliations, but it was not until February 2019 that she filed the present action. Huber offers no justification for not bringing her claim until 2019 instead of when she received this information in 2016. Without showing more "compelling equitable considerations," extension of the limitations period is not justified here. *Graham-Humphreys*, 209 F.3d at 561 (citation omitted). Huber's claims will accordingly be dismissed as untimely.

### B. State Claims

Huber also asserts Kentucky state-law claims for discrimination based on age, hostile work environment, and civil conspiracy under the KCRA. (Compl. ¶¶ 49-51, 56-58, 63-65). The Sixth Circuit has held that "a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citations omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). Determining whether Huber's state-law claims are time-barred requires analysis of Kentucky law pertaining to the discovery rule, equitable tolling, and potentially several subjects of law falling under the KCRA. Under these circumstances, the Court declines to exercise

supplemental jurisdiction over Huber's state-law claims because it has dismissed her federal claims as untimely. *See Moon*, 465 F.3d at 728; 28 U.S.C. § 1367(c)(3).

V. **CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (DN 4) is **GRANTED**. Plaintiff's federal claims are **DISMISSED WITH PREJUDICE**. Plaintiff's state-law claims are **DISMISSED WITHOUT PREJUDICE**.

Greg N. Stivers, Chief Judge
United States District Court

July 19, 2019

cc: counsel of record